**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------x
| | |
|---|---|
| IN RE WACHOVIA CORPORATION : | Master File 08 Civ. 5320 (NRB) |
| ERISA LITIGATION : | ECF Case |

------------------------------------------------------x

| | |
|---|---|
| THIS DOCUMENT RELATES TO: : | **MEMORANDUM OF LAW IN SUPPORT** |
| ALL ACTIONS : | **OF MOTION BY PLAINTIFF ROSE** |

------------------------------------------------------x  **HANSEN FOR APPOINTMENT OF**
**INTERIM CO-LEAD COUNSEL**

Plaintiff Rose Hansen ("Plaintiff" or "Hansen") respectfully submits this Memorandum of Law in support of her Motion for Appointment of Interim Co-Lead Counsel.

## INTRODUCTION

By Order dated July 30, 2008, as amended August 13, 2008 (D.E. No. 28), the Court consolidated all of the ERISA actions, established case handling procedures, and set a deadline of August 26 for filing of any motions for appointment of interim lead counsel.

Plaintiff Hansen moves to have Spector Roseman & Kodroff, P.C. ("Spector Roseman") and Stember Feinstein Doyle & Payne, LLC ("Stember Feinstein") appointed Interim Co-Lead Counsel; and Lewis, Clifton & Nikolaidis, P.C. ("Lewis Clifton") appointed Liaison Counsel for the class of ERISA plan participants. These firms have the background, experience, competencies and resources to manage this large ERISA case, since they combine some of the country's most experienced ERISA litigators with securities, class action and financial trial lawyers to forge a team that can handle all of the aspects of this complex case.

As evidenced by Hansen's complaint and the complaints that followed, Wachovia's financial deterioration was caused by a wide array of illegal, improper and ill-considered business practices, including over-exposure to nonconforming mortgages, using reduced underwriting standards for mortgages, over-exposure to construction and land-improvement

loans, improper accounting for actual and expected losses related to its mortgage and loan portfolios, misleading investors as to the safety of its auction rate securities ("ARS"), involvement in a municipal derivatives bid rigging scheme, money-laundering, and the other problems adversely affecting this particular financial institution.  This case requires a unique array of legal talents in light of the spectrum of problems at Wachovia.  Spector Roseman and Stember Feinstein have that knowledge and experience to act effectively on behalf of the Class.

## STATEMENT OF THE CASE

On June 10, 2008, Plaintiff filed this class action against the fiduciaries of the Wachovia National Corporation Savings Plan (the "Plan") to recover losses arising from the Plan fiduciaries' breach of fiduciary duties, including investment in the common stock of Wachovia Corporation ("Wachovia" or the "Company"), despite knowledge of material adverse information about Wachovia's financial condition which rendered these investments imprudent. Plaintiff alleges violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), including Sections 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2).  The case has been assigned to Judge Buchwald.[1]

Subsequent to Plaintiff's filing of this lawsuit, several additional actions were filed in this District against Wachovia and the Plan fiduciaries seeking relief under ERISA.[2]  All of the cases

---

[1] *Hansen* was filed as related to *Waldman v. Wachovia Corp.*, No. 08 Civ. 2913 (S.D.N.Y.).  By notation on the Docket dated July 1, 2008, Judge Scheindlin declined to consider the cases as related for the purposes of judicial assignment, and the case was assigned to Judge Buchwald.

[2] *Wright v. Wachovia Corp.*, No. 08 Civ. 5324 (S.D.N.Y.) (filed June 11, 2008); *Tuttle v. Wachovia Corp.*, No. 08 Civ. 5578 (S.D.N.Y.) (filed June 20, 2008); *Cominsky v. Wachovia Corp.*, No. 08 Civ. 5990 (S.D.N.Y.) (filed July 1, 2008); *Willard v. Wachovia Corp.*, No. 08 Civ. 6196 (S.D.N.Y.) (filed July 8, 2008); and *Kelly v. Wachovia Corp.*, No. 08 Civ. 6623 (S.D.N.Y.)

(collectively referred to as the "ERISA actions") make substantially similar claims for relief under ERISA on behalf of Plan participants and beneficiaries.

By Order dated July 30, 2008, as amended August 13, 2008 (D.E. No. 28), the Court consolidated all of the ERISA actions, established case handling procedures, and set a deadline of August 26 for filing of any motions for appointment of interim lead counsel.

## STATEMENT OF THE FACTS

As alleged in the *Hansen* Complaint, Wachovia is a financial services corporation with employees throughout the country. The Plan is an "employee pension benefit plan" within the meaning of Section 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A), providing benefits to certain current and former employees of Wachovia and affiliated companies. It is a "defined contribution plan" or "individual account plan" in that it provides individual accounts for each participant and benefits based solely upon the amounts contributed to those accounts. A portion of the Plan consists of an employee stock ownership plan ("ESOP") designed to invest primarily in employer securities. The Plan also provides for an employer matching contribution of no more than 6% of the employee's eligible compensation, 1% of which is invested in the Wachovia Corporation Common Stock Fund ("Company Stock Fund"). That initial investment continues in the Company Stock Fund until a participant affirmatively acts to transfer into some other investment option.

Under the terms of the Plan, employees could contribute up to 30% of their eligible income to the Plan, and could choose among a number of investment vehicles offered to Plan participants. One of the investment vehicles selected by the Plan's fiduciaries for participant

_____

(filed July 25, 2008).

contributions was the Company Stock Fund.[3]

According to the Plan's Form 11-K filed with the Securities and Exchange Commission ("SEC"), as of December 31, 2006, the Plan held investments with a reported value of $8,104,608,700, of which $1,563,918,851 was in allocated shares in the ESOP and $120,651,453 was held in the Non-ESOP Fund. An additional $10,784,333 was reported to be held in unallocated shares of the ESOP.

Plaintiffs in both the instant suit and the five other ERISA Actions allege that Defendants breached their fiduciary duties of prudence and loyalty under ERISA by making and maintaining investments in Wachovia stock in the Plan, despite the fact that such investments were unduly risky and imprudent due to a variety of factors which were not disclosed to Plaintiffs and Plan participants but which were known or which should have been known by Defendants. As alleged in the *Hansen* Complaint, these factors included, among other things:

> • While Wachovia claimed not to be involved in the subprime mortgage business, Wachovia Bank, N.A. ("Wachovia Bank"), Wachovia's wholly-owned subsidiary, continued to issue non-conforming real estate mortgages to borrowers without considering their credit scores or verifying their assets or employment status;
>
> • Wachovia understated and delayed recognition of its loan losses and took other actions so as to violate federal securities laws, resulting in class action litigation against it by Company stock purchasers;
>
> • Wachovia failed to adjust its methodology for loss provisions in a manner that

---

[3] There was also a Wachovia Stock Non-ESOP Fund ("Company Stock Non-ESOP Fund"). Only participants employed by a business entity not taxable as a corporation, such as employees of Wachovia Securities LLC, were permitted to invest in this fund.

took into account known changes in the credit landscape;

> • Wachovia misled investors as to its auction rate securities ("ARS"), and failed to disclose that these instruments, far from being highly liquid cash alternatives suitable for short-term investing, were actually long-term instruments that were illiquid, a misrepresentation that has resulted in class action litigation alleging securities law violations being filed against it by ARS customers and has caused the SEC to issue subpoenas to Wachovia regarding its ARS data;

> • Wachovia was, due to its investment in hedge funds managed by Citigroup, heavily exposed in bank-owned life insurance policies, an investment which later caused it to report a $315 million write-down for the first quarter of 2008;

> • Wachovia was involved in a municipal bid-rigging scheme (Hansen Compl. ¶ 125-137);

> • Wachovia failed to maintain sufficient management controls to timely address problems which, in turn, negatively affected the Company's reputation, especially its reputation for integrity. Such failures included facilitating the defrauding of its own elderly customers (*Id.* at ¶ 96); and federal investigation into improper money-laundering (*Id.* at ¶ 97). These problems created dire financial circumstances which rendered Company stock an imprudent investment for the Plan, one which exposed the Plan and their participants to excessive risk.

Hansen Compl., ¶¶ 3. As a direct and proximate result of Defendants' breaches of fiduciary duties, Plaintiff Hansen, the Plan, and the Plan's participants lost a significant portion of their retirement investment.

<u>ARGUMENT</u>

**THE COURT SHOULD APPOINT SPECTOR ROSEMAN AND STEMBER FEINSTEIN AS INTERIM CO-LEAD COUNSEL FOR THE PLAINTIFFS**

Prior to certifying a class under Fed. R. Civ. P. 23, the Court may designate interim counsel to act on behalf of the putative class.  Rule 23(g)(C)(2)(A).  Interim Co-lead Counsel direct the day-to-day conduct of the litigation, including:

> formulating (in consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation . . . .in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met.

MCL 4th § 10.221; *see also* proposed Order.  Additionally, they monitor the time and expenses of all plaintiffs' counsel to ensure that this litigation is conducted efficiently and without duplication.  *Id.*

It is well-established that appointment of interim lead counsel is appropriate in order to insure efficient representation of the class.  Professor Moore has noted:

> It is . . . within the court's discretion to appoint general or lead counsel whose function is to supervise and coordinate the conduct of the consolidated cases.

5 J. Moore, *Moore's Federal Practice* ¶42.02[2], at 42-7 (2d ed. 1988) (footnote omitted), *citing Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977).

In *MacAlister v. Guterma*, 263 F.2d 65, 69 (2d Cir. 1958), the court emphasized the benefits to be gained from the appointment of lead counsel:

> The benefits achieved by consolidation and the appointment of

-6-

> general counsel, *i.e.*, elimination of duplication and repetition and
> in effect the creation of a coordinator of diffuse plaintiffs through
> whom motions and discovery proceedings will be channeled, will
> most certainly redound to the benefit of all parties to the litigation.
> The advantages of this procedure should not be denied litigants in
> the federal courts because of misapplied notions concerning
> interference with a party's right to his own counsel.

*Id.* The rationale expressed in *MacAlister* has been cited with approval by numerous courts. For

example, in *Hughes Air West*, the court held:

> The authority recognized in *MacAlister has never been seriously
> disputed. Indeed, many courts since that decision have explicitly
> reaffirmed their authority to appoint lead counsel and have
> exercised that authority.*

*Id.*, 557 F.2d at 774 (citations omitted, emphasis added). *In Walker v. Deutsche Bank*, AG, No.

04 Civ. 1921 (DAB), 2005 WL 2207041 (S.D.N.Y. Sept. 6, 2005), the Court stated:

> Moreover, a court is not restricted to the appointment of only one
> lead counsel, and indeed, appointment of a single lead counsel is
> inappropriate when counsel for each named plaintiff in the
> consolidated actions, "being so experienced in [the] type of
> litigation [at issue in the consolidated actions], may be expected to
> coordinate the conduct of the proceedings in a manner that will
> avoid unnecessary duplication."

*Id.* at *3 (quoting *Fields v. Wolfson*, 41 F.R.D. 329, 330 (S.D.N.Y.1967). *Accord*, *In re*

*Bendectin Litigation*, 857 F.2d 290, 297 (6th Cir. 1988), *cert. denied*, 488 U.S. 1006 (1989); *In*

*re Aircrash Disaster at Florida Everglades*, 549 F.2d 1006, 1014 (5th Cir. 1977) ("It is not open

to serious question that a federal court in a complex, consolidated case may designate one

attorney or set of attorneys to handle pre-trial activity on aspects of the case where the interests of

all co-parties coincide."). The *Manual for Complex Litigation* also encourages appointment of

such lead counsel. MCL 4th § 10.22.

Where there is more than one movant, the court must appoint the firm or firms best able to represent the interests of the class. Fed. R. Civ. P. 23(g)(C)(2)(B); *See* MCL 4th § 10.22, 21.273.  The *Manual for Complex Litigation* also specifically encourages the use of lead counsel in consolidated cases of this type and, significantly, urges the Court to appoint lead counsel when the parties are unable or unwilling to do so themselves:

> In some cases the attorneys coordinate their activities without the court's assistance, and such efforts should be encouraged.  More often, however, the court will need to institute procedures under which one or more attorneys are selected and authorized to act on behalf of other counsel and their clients with respect to specified aspects of the litigation.

MCL 4th §10.22.  The Manual recognizes the roles of lead counsel, liaison counsel, the executive committee and various other working committees of counsel.  *Id.*, § 10.221.

In determining lead counsel, the Court should "conduct an independent review (usually a hearing is advisable) to ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable."  MCL 4th at § 10.22.  Indeed, the most important factor is "achieving efficiency and economy without jeopardizing fairness to parties." *Id*. at § 10.221. In appointing class counsel, the court must consider the following four factors:

- the work counsel has done in identifying or investigating potential claims in the action;

- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;

- counsel's knowledge of the applicable law; and

- the resources counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(C)(I).

Plaintiff proposes that the Court appoint Spector Roseman and Stember Feinstein as Interim Co-Lead Counsel for the ERISA cases, pursuant to Fed. R. Civ. P. 23(g)(2), to act on behalf of the putative class, and that Lewis Clifton be appointed Liaison Counsel for the ERISA class plaintiffs. Spector Roseman and Stember Feinstein have the experience and expertise necessary to lead a case of this kind, and they have a history of working well with other plaintiff firms to achieve an excellent result for the class. Each of the four factors supports the appointment of the proposed group.

### A. Counsel for Plaintiff Has Demonstrated a Commitment to Identifying and Investigating Potential Claims

With respect to the first factor, proposed Interim Counsel have already undertaken numerous steps in prosecuting this action. Counsel for Hansen brought the first ERISA action in this District or anywhere else. Prior to filing, counsel interviewed more than a dozen Plan participants in order to identify and investigate the claims in this case. Counsel conducted extensive review of SEC filings, company statements, and media and trade paper coverage tracing the history of Wachovia's unfolding problems. Counsel has actively monitored the recent claims that have been asserted against Wachovia - not only the ERISA actions but also the securities fraud actions - and has monitored activity by governmental and regulatory bodies. Since the filing of the Complaint, Plaintiff's counsel has spoken to numerous additional plan participants and has been continuously reviewing various news media accounts and articles covering the Wachovia unfolding problems and has been conducting additional daily research with a view to filing a consolidated complaint once this motion is decided. Counsel has also

been retained by two additional Plan participants.

After the Court ordered that plaintiffs move for appointment of lead plaintiff, movants wrote to the Court regarding the difference in the procedures under the Private Securities Litigation Reform Act and ERISA. As a result, the Court amended its Case Management Order to instead provide for motions seeking appointment of lead counsel.

In addition to the substantive work, the law firms proposed as Interim Co-Lead Counsel have been in regular communication with counsel in the other ERISA actions for over a month on how best to litigate these actions successfully and cooperatively, including attempting to negotiate a leadership structure. Movants all fully understand the substantial investment of time and resources necessary to properly pursue and lead this case, and are committed to making the necessary investment in this case.

## B. Plaintiff's Counsel Meet the Experience and Knowledge Requirements of Rule 23(g)

The second and third Rule 23(g) factors – the most persuasive factors – also demonstrate that the proposed Interim Co-Lead Counsel are the best qualified to serve in this ERISA class action. *See, e.g., In re Terazosin Hydrochloride Antitrust Litig,* 220 F.R.D. 672, 702 (S.D. Fla. 2004) (explaining that the "most persuasive" factor in choosing lead counsel pursuant to Rule 23(g) may be proposed counsel's "experience in, and knowledge of, the applicable law in this field").

Movants here are ideally suited to lead the prosecution of these cases. The claims herein are based in the substantive law of ERISA, but the factual allegations reflect the kinds of investment schemes that are subject to litigation under the securities laws. As demonstrated

below, movants have extensive experience in complex class action litigation as well as securities fraud and ERISA litigation.

### 1.    Spector Roseman & Kodroff, P.C.

As demonstrated in its Firm Biography (attached as Exhibit 1 to the Lieverman Declaration), Spector Roseman has a unique set of experience and skills especially suited for leadership in this case against Wachovia in light of the range of Wachovia's problems and alleged misconduct. This includes experience in litigating cases under ERISA, cases involving securities fraud, and complex class actions of all kinds. Some the Firm's most recent successful cases include:

• *In re SCOR Holding (Switzerland) AG Litigation*, No. 04 Civ. 07897 (MBM) (S.D.N.Y.) (co-lead counsel in securities action, settlements of $145 million pending);

• *In re Parmalat Securities Litigation*, No. 04 Civ. 0030 (LAK) (S.D.N.Y.) (counsel to lead plaintiff, partial settlements to date exceed $85 million);

• *In re Linerboard Antitrust Litigation*, C.A. No. 98-5055 (E.D. Pa.) (co-lead counsel, settled for $202 million);

• *In re Flat Glass Antitrust Litigation*, MDL No. 1200 (W.D. Pa.) (co-lead counsel, settled for $120 million);

• *Stop & Shop Supermarket Co. v. Smithkline Beecham Corp.* C.A. 03-4578 (E.D. Pa.) (co-lead counsel for direct purchasers of Paxil, settled for $100 million);

• *In re OSB Antitrust Litigation*, Master File No. 06-CV-00826 (PSD) (E.D. Pa.) (co-lead counsel for direct purchasers, partial settlements to date of over $70 million).

Spector Roseman initiated the private investigation and filed the first cases challenging

-11-

the misuse of the "Average Wholesale Price" in selling pharmaceutical products.  *In re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430 (D. Mass.); and *In re Pharmaceutical Industry Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.).  These cases, pursued by a team of co-lead counsel, resulted in settlements of $150 million in *Lupron* and over $230 million to date in *AWP* (with two defendants still facing trial).

    Spector Roseman also has substantial experience in litigating labor and employee benefit issues.  The Firm was sole lead counsel for plaintiffs in *Pennsylvania Federation, Brotherhood of Maintenance of Way Employes v. Norfolk Southern Corp.*, C.A. No. 02-9049 (E.D. Pa.), in which plaintiffs challenged the policy of requiring investment of all employer contributions to the 401(k) plan in company stock.  In that case, asserting breach of defendants' fiduciary duties under ERISA, the court approved a settlement providing for reforms in the plan documents to allow for complete employee choice of investments, new guidance to plan participants to diversify their retirement investments, as well as restitution to plan participants.

    Further, Spector Roseman frequently represents employee benefit plans in class action litigation and is familiar with how such plans operate, as well as the duties owed to plan participants by plan fiduciaries and others.  In *In re Express Scripts, Inc., PBM Litig.*, Master Case No. 05-md-01672-SNL (E.D. Mo.), Spector Roseman represents the Health and Welfare Fund and the Retiree Health and Welfare Fund of the Patrolmen's Benevolent Association of the City of New York in an action claiming breach of fiduciary duty against their former pharmaceutical benefit manager.  *See also In re Relafen Antitrust Litig.*, C.A. No. 01-12239 (D. Mass.) ($75 million settlement for indirect purchasers, and counsel devised innovative new program to insure that settlement moneys went into the hands of over 200,000 consumers); *In re*

-12-

*Pharmaceutical Industry Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, C.A. No. 05-11148  (D. Mass.); and *District 37 Health and Securities Fund v. Medi-Span*, C.A. No. 07-10988 (D. Mass. 2007) (major change in pricing for prescription drugs); *In re TriCor Antitrust Litig.*, C.A. No. 05-360 (D. Del.) (trial scheduled for Nov. 3, 2008); *In re Modafinal Antitrust Litig.*, C.A. No. 06-1797 (E.D. Pa.).

Spector Roseman has assigned an experienced team to prosecute this case, one that is experienced in ERISA litigation as well as labor and employment disputes, securities fraud and other complex class action litigation - and will assign additional lawyers as needed.  The legal team has substantial experience in not just the traditional duties of counsel under the rules of civil procedure, but the tasks peculiar to complex litigation such as working with investigators and forensic accountants, handling depositions around the world, constructing electronic databases of discovery documents totaling millions of pages, supervising large teams of lawyers analyzing discovery documents, and finding and engaging highly qualified expert witnesses and consultants.

The team includes:

• Theodore M. Lieverman, who will be the lead partner on this case, has spent 30 years handling labor and employment related cases, including claims under ERISA.  He was lead counsel in the successful prosecution of *Pennsylvania Federation, Brotherhood of Maintenance of Way Employes v. Norfolk Southern Corp.*, C.A. No. 02-9049 (E.D. Pa.).  He has tried numerous cases to judges, juries, and administrative judges, including ERISA fiduciary duty cases.  *See Sheet Metal Workers Local 28 of New Jersey Welfare Fund v. Gallagher*, C.A. No.

-13-

87-3020 (D. N.J.), *on appeal*, 960 F.2d 1195 (3d Cir. 1992).[4]  Mr. Lieverman served as co-

counsel for a nationwide class of retirees who sued Campbell Soup under ERISA for lost medical

benefits.  *Local 56 UFCW v. Campbell Soup Co.*, 954 F. Supp. 1000 (D. N.J. 1997).  The case

resulted in a settlement of $114 million to create an employee-controlled voluntary employee

beneficiary association ("VEBA"), which the Court called "one of the most innovative and

forward-looking resolutions that this court has approved in the twenty-two years of its tenure."

*Id.* at 1003.

During 1995-1997, he appeared before the late Judge Edelstein of this Court on numerous

occasions as general counsel to the Court-appointed Election Officer who conducted the 1996

officer elections for the 1.4 million members of the International Brotherhood of Teamsters.

*United States v. International Brotherhood of Teamsters*, No. 88 Civ. 4486 (S.D.N.Y.)

(numerous reported cases).  Mr. Lieverman litigated one of the leading case on the use of labor-

management cooperation programs in unionized workplaces.  *E.I. duPont deNemours & Co.*, 311

NLRB No. 88 (1993).

Mr. Lieverman is AV- rated by Martindale-Hubbell and is listed in *Who's Who in*

*America*, *Who's Who in American Law*, *The Best Lawyers in America*, and Law & Politics' list of

Pennsylvania "Superlawyers."  He is a member of the AFL-CIO Lawyers Coordinating

Committee, the Philadelphia Chapter of the Labor Education and Research Association, the

American Antitrust Institute, the American Constitution Society, and the Philadelphia Bar

---

[4]  *See also Finkler v. Elsinore Shore Associates*, C.A. No. 89-2330 (D. N.J.) (bench trial);
*Ferris v. Pennsylvania Federation, Brotherhood of Maintenance of Way Employes*, C.A. No. 99-
4147 (E.D. Pa.) (one week jury trial against 14 defendants, no class); *E.I. duPont deNemours &
Co.*, 311 NLRB No. 88 (1993) (two week trial to administrative law judge).

Association.

• Robert M. Roseman, a named partner of the Firm, has served in the leadership of many securities fraud class actions, including *In re SCOR Holding (Switzerland) AG Litigation*, No. 04 Civ. 07897 (MBM) (S.D.N.Y.) (co-lead counsel for class, settled for $145 million); *In re Parmalat Securities Litigation*, No. 04 Civ. 0030 (LAK) (S.D.N.Y.) (partial settlements to date exceed $85 million); *Welmon v. Chicago Bridge & Iron Co. N.V.*, No. 06 Civ. 1283 (S.D.N.Y.); *In re Xcel Energy, Inc. Securities Derivative & "ERISA" Litigation*, MDL No. 1511 (D. Minn.); and *In re Abbott Laboratories, Inc. Derivative Shareholder Litigation*, C.A. No. 99-C 07246 (N.D. Ill.) (co-lead counsel for plaintiffs), which settled in 2004 for substantial corporate governance reforms funded by $27 million from directors. The ABA's *Securities Litigation Journal* called the Seventh Circuit's opinion in *Abbott* the second most important decision in 2003. A more complete listing of his securities fraud cases is contained in the Firm Biography.

Mr. Roseman is well-versed in leading large complex cases to obtain not just large damage awards, but also significant institutional changes in corporate governance. He has been a frequent speaker at U.S. and international conferences on issues related to investor protection and corporate governance, including institutional investor conferences in London, Paris and Amsterdam. He was also asked to speak before the United Nations Corporate Governance conference in San Palo in June 2004. Mr. Roseman is AV-rated by Martindale-Hubbell and has been named by Law & Politics to its list of Pennsylvania "Superlawyers."

• Andy Abramowitz, partner, has played a leading role in many of the Firm's leading cases, including supervising associates and taking depositions internationally, in such cases as *In re Parmalat Securities Litigation*, No. 04 Civ. 0030 (LAK) (S.D.N.Y.); *In re Royal Dutch/Shell*

*Securities Litigation*, C.A. No. 04-374 (D. N.J.); *In re SCOR Holding (Switzerland) AG Litigation*, No. 04 Civ. 07897 (MBM) (S.D.N.Y.); *In re PSINet, Inc. Securities Litigation*, Civ. No. 00-1850-A (E.D. Va.); *In re Unisys Corporation Securities Litigation*, No. 99-CV-5333 (E.D. Pa.); *O'Brien v. Ashcroft* (*Tyco Corp. Derivative Litigation*), No. 03-E-0005 (N.H. Super. Ct.); *Brudno v. Wise* (*El Paso Corp. Derivative Action*), C.A. No. 19953NC (Del. Ch.); *In re Xcel Energy, Inc. Securities Derivative & "ERISA" Litigation*, MDL No. 1511 (D. Minn.); *In re Bristol-Myers Squibb Derivative Litigation*, No. 02 Civ. 8571 (S.D.N.Y.); *Rosenthal v. Dean Witter Reynolds, Inc.*, No. 91-CV-429 (Dist. Ct. Douglas Cty., Colo.); *In re Visa Check/ MasterMoney Antitrust Litigation*, No. CV-96-5238 (S.D.N.Y.); *Moskowitz v. Mitcham Industries, Inc.*, C.A. No. H-98-1244 (S.D. Tex.); and *In re Flat Glass Antitrust Litigation*, C.A. No. 97-550 (W.D. Pa.).

 He also served as co-lead with Mr. Lieverman in the ERISA case *Pennsylvania Federation BMWE v. Norfolk Southern Corp.*, C.A. No. 02-9049 (E.D. Pa.).

 • Daniel J. Mirarchi, associate, concentrates on complex commercial and financial cases. He has worked on *In re Parmalat Securities Litigation*, No. 04 Civ. 0030 (LAK) (S.D.N.Y.); *In re SCOR Holding (Switzerland) AG Litigation*, No. 04 Civ. 07897 (MBM) (S.D.N.Y.); *Welmon v. Chicago Bridge & Iron Co. N.V.*, No. 06 Civ. 1283 (S.D.N.Y.). He has also been active in *In re K-Dur Antitrust Litigation*, C.A. No. 01-1652 (D.N.J.); and *In re Vioxx Litigation*, No. 619 (N.J. Super. L.). He also worked on the ERISA case *Pennsylvania Federation BMWE v. Norfolk Southern Corp.*, C.A. No. 02-9049 (E.D. Pa.).

 Spector Roseman has the experience and expertise in complex class actions, as well as experience with cases under ERISA, to successfully lead plaintiffs in this matter. The Firm is

well suited to serve as one of the Interim Co-Lead Counsel.

### 2.    Stember Feinstein Doyle & Payne, LLP

Stember Feinstein has unrivaled experience with ERISA litigation.  *See* Lieverman Decl., Ex. 2 (Firm Biography for Stember Feinstein).

### (a)    Ellen M. Doyle

Partner Ellen M. Doyle is one of the country's most experienced ERISA litigators.  She served as one of the trial counsel in *In re Gulf Pension Litig.*, C.A. No. H-86-4365 (S.D. Tex.), one of the largest ERISA cases ever tried.  She has extensive experience representing classes of plan participants who allege breaches of fiduciary duties under ERISA with respect to 401k plans, ESOP plans, and other defined contribution plans.

Ms. Doyle is one of the pioneers in litigating ERISA fiduciary breach company stock cases.  In 1997, Ms. Doyle initiated *Blyler v. Agee*, C.A. No. 97-0332 (D. Idaho), in which she served as co-lead counsel in one of the very first actions challenging the prudence of investment in Morrison Knudsen Corporation stock by its 401(k) plan's fiduciaries as well as the prudence of investment by its ESOP's fiduciaries.  That same year, she began litigation in which she served as co-lead counsel in *Presley v. Carter Hawley Hale Profit Sharing Plan*, C.A. No. 97-04316 (N.D. Cal.), which involved an ESOP plan which held company stock into the company's bankruptcy.

Ms. Doyle has been appointed to serve as co-lead counsel in ERISA class actions challenging the prudence of investment in company stock, including  *Koch v. Dwyer*, No. 98 Civ. 5519 (S.D.N.Y).  *Koch* was one of the first company stock cases litigated in this District.  *See also Sherrill v. Federal Mogul Corp. Retirement Programs Committee*, C.A. No. 04-72949 (E.D.

-17-

Mich.); *In Re RCN Corporation ERISA Litigation*, Master File No. 04-CV-5068 (D. N.J.); *In re CMS Energy ERISA Litig.*, C.A. No. 02-72834 (E.D. Mich.); *In re Computer Associates ERISA Litig.*, No. 02 Civ. 6281 (S.D.N.Y.); *Kling v. Fidelity Management Trust Co.*, C.A. No. 01-11939 (D. Mass.); *In re McKesson HBOC, Inc. ERISA Litig.*, C.A. No. C00-20030 (N.D. Cal.).

Attorney Doyle had years of experience in litigating ERISA class actions before 1997 when she started filing company stock cases. She has also represented classes of plan participants in defined benefit pension plans, including in cases such as *DiCioccio v. Duquesne Light Co.*, C.A. No. 93-0442 (W.D. Pa.); *Barnes v. Bell Helicopter Textron, Inc.*, No. CA-92-CV-0694-D (N.D. Tex.); *In re Gulf Pension Litig.,* C.A. No. H-86-4365 (S.D. Tex.).

Ms. Doyle has also served as class counsel for medical benefit plan participants in ERISA covered plans, including *Fischel v. The Equitable Life Assurance Society of the United States,* C.A. No. 96-04202 (N.D. Cal.); *In re Blue Cross of Western Pennsylvania Litig.*, C.A. No. 93-1591 (W.D. Pa.); and *Kennedy v. United Healthcare of Ohio, Inc.*, C.A. No. C2-98-128 (S.D. Ohio). *See* Lieverman Decl., Ex. 3.

Ms. Doyle serves as the Plaintiff's co-chair on the ERISA sub-committee on Employee Rights and Responsibilities, and has lectured on and written a number of articles and speeches regarding ERISA.

### (b)   William T. Payne

Over the past twenty-five years, William Payne has served as counsel for plan participants in more than eighty ERISA class action lawsuits throughout the United States.[5]

---

[5] Among some of the employee benefit cases in which Mr. Payne served as counsel are*: Armistead v. Vernitron Corp.*, 944 F.2d 1287 (6th Cir. 1991); *Policy v. Powell Pressed Steel Co.*, 770 F.2d 609 (6th Cir. 1985), *cert. denied*, 475 U.S. 1017 (1986); *Smith v. ABS Industries*, 890

F.2d 841 (6th Cir. 1989); *Mamula v. Satralloy*, 578 F. Supp. 563 (S.D. Ohio 1983); *Pringle v. Continental Tire North America*, 2007 WL 2236880 (N.D. Ohio. July 31, 2007); *Keffer v. H. K. Porter Co.*, 872 F.2d 60 (4th Cir. 1989), *affirming*, 110 CCH Lab. Cases ¶10,878 (S.D. W.Va., April 19, 1988); *Steelworkers v. Connors Steel Co.*, 855 F.2d 1499 (11th Cir. 1988); *Steelworkers v. Textron, Inc.*, 836 F.2d 6 (1st Cir. 1987); *Bower v. Bunker Hill Co.*, 725 F.2d 1221 (9th Cir. 1984), *on remand*, 114 F.R.D. 587, 675 F. Supp. 1254 (E.D. Wash. 1986); *Senn v. United Dominion*, 951 F.2d 806 (7th Cir. 1992), *petition for rehearing denied*, 962 F.2d 655 (1992), *cert. denied*, 509 U.S. 903 (1993); *Asarco v. United Steelworkers of America*, 2005 U.S. Dist. LEXIS 20873 (D. Ariz. 2005); *Crown Cork & Seal v. United Steelworkers of America*, 32 E.B.C. 1950, 2004 U.S. Dist. LEXIS 760  (W.D. Pa. 2004); *Shultz v. Teledyne*, 657 F. Supp. 289 (W.D. Pa. 1987); *Mioni v. Bessemer Cement Co.*, 4 E.B.C. 2390 (W.D. Pa. 1983), *later decision*, 120 LRRM 2818 (W.D.Pa. 1984), and 6 E.B.C. 2677, 123 LRRM 2492 (W.D.Pa. 1985), *later decision*, 700 F. Supp. 267 (W.D.Pa. 1988); *Rexam, Inc. v. United Steelworkers of America*, 31 E.B.C. 2562 (D. Minn. 2003), *later proceedings*, 2005 WL 2318957 (D. Minn. 2005); *Shultz v. Teledyne*, 657 F. Supp. 289 (W.D. Pa. 1987); *ACF Industries v. Chapman*, 2004 U.S. Dist. LEXIS 27245 (E.D. Mo. 2004); Bellas v. CBS, 221 F.3d 517 (3d Cir. 2000), *cert. denied*, 531 U.S. 1104 (2001); *Alford v. Strichman*, Case No. 84-20 (W.D. Pa.) (retiree health class settlement for Crucible Steel retirees worth approximately $60 million); *Bench v. Disney*, Case No. CV-97-8203 TJH (AIJx) (C.D. Calif.) (retiree health class settlement in two stages, with the first stage worth approximately $68 million, and the second stage worth approximately $33 million); *Orlowski v. St. Francis Health System*, No. GD 02-17811 (Pa. Common Pleas, Allegheny County) ($13 million pension settlement); *Ruiz v. BP*, No. 91-1453-PHX-RGS (retiree health class settlement involving thousands of retirees).

Among Mr. Payne's reported decisions in ERISA pension cases are the following: *Brubaker v. Metropolitan Life Ins. Co.*, 482 F.3d 586 (D.C. Cir. 2007) (pension suit); *Brytus v. Spang & Co.*, 79 F.3d 1137 (not for publication) (3d Cir. 1996), *cert. denied*, 519 U.S. 818 (1996), (recovery of $12.5 million in surplus pension assets for pensioners), *later proceedings*, 151 F.3d 112 (3d Cir. 1998), *later proceedings*, 203 F.3d 238 (3d Cir. 2000); *Deeming v. American Standard, Inc.*, 905 F.2d 1124 (7th Cir. 1990) (ERISA § 510 case); *Delgrosso v. Spang & Co.*, 769 F.2d 928 (3d Cir. 1985), *cert. denied*, 476 U.S. 1140 (1986), *later proceedings*, 903 F.2d 234 (3d Cir.), *cert. denied*, 498 U.S. 967 (1990), and 776 F. Supp. 1065 (W.D. Pa. 1991) (recovery of surplus pension assets for pensioners); *Dennis v. Sawbrook Steel Castings Co.*, 792 F. Supp. 552, 119 Lab. Cas. (CCH) P10,785, 13 E.B.C. 1950 (S.D. Ohio 1991) (pension lawsuit); *Faiola v. Youngstown Steel Door Company*, 112 Lab.Cas.  P 11,346 (N.D. Ohio 1989), *subsequent decision*, 137 L.R.R.M. 2999 (1990) (pension lawsuit); *Gritzer v. CBS, Inc.*, 275 F.3d 291 (3d Cir. 2002) (pension lawsuit Mr. Payne personally briefed and argued on appeal); *Haytcher v. ABS Industries, Inc.*, 889 F.2d 64 (6th Cir. 1989) (recovery of shutdown pensions); *McLendon v. Continental Group*, 749 F.Supp. 582 (D.N.J. 1989), *aff'd*, 908 F.2d 1171 (3d Cir. 1990) (ERISA § 510 class action, resolved as part of $415 million settlement); *Penn. Fed'n, Bhd. of Maint. of Way Emples. v. Norfolk Southern Corp. Thoroughbred Retirement Investment Plan*, 2005 U.S. Dist. LEXIS 296 (D. Pa. 2005) (pension class action); *Pieseski v. Northrop Grumman*,

In 2006, Mr. Payne was appointed as class counsel to represent nearly 600,000 former UAW members (and spouses of members) in actions against General Motors and Ford that were worth billions of dollars.  *See UAW v. Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471 (E.D. Mich. 2006); *UAW v. GM*, 2006 U.S. Dist. LEXIS 14890 (D. Mich. 2006).  The Sixth Circuit, after reviewing Mr. Payne's credentials, observed in the GM/Ford appeal:

> In view of Payne's background, both classes would have been hard pressed to find someone with greater "experience in handling class actions ... and claims of the type asserted in the action" or an attorney with more "knowledge of the applicable law."

*UAW v. GM*, 497 F.3d 615, 626 (6th Cir. 2007 (quoting Fed.R.Civ.P. 23(g)(1)(C)(i)).

In 2007, Mr. Payne, Ms. Doyle, John Stember and Stember Feinstein were appointed class counsel to represent GM, Ford, and Chrysler retirees in another round of litigation involving retiree health benefits.  *UAW v. GM*, 2008 WL 2968408 (E.D. Mich. July 31, 2008); *UAW v. Ford Motor Co.*, 2007 WL 4571648 (E.D. Mich. December 27, 2007); *UAW v. Chrysler LLC*, 2008 WL 2980046 (E.D. Mich. July 31, 2008).

In other consolidated cases, Mr. Payne served as one of the counsel for a class of former employees of Continental Can who were terminated to prevent them from becoming eligible for pension and other retirement benefits.  The lawsuit, brought under Section 510 of ERISA,

---

2002 U.S. Dist. LEXIS 11891, 27 E.B.C. 2663 (W.D.Pa. 2002) (ERISA § 204(g) action);  *Pollak v. Freightcar Am.*, Inc., 2007 U.S. Dist. LEXIS 61337 (W. D. Pa. 2007) (ERISA § 510); *Rinard v. Eastern Co.*, 978 F.2d 265 (6th Cir. 1992), *cert. denied*, 507 U.S. 1029 (1993) (lawsuit for surplus pension assets); *Shaver v. Siemens Corp.*, 2007 U.S. Dist. LEXIS 23578 (D. Pa. 2007) (pension action); *Shawley v. Bethlehem Steel Corp.*, 989 F.2d 652 (3d Cir. 1993) (ERISA § 510 class action); *Gillott v. Westinghouse Elec. Corp.*, 23 E.B.C. 1500, 1999 U.S. Dist. LEXIS 14111 (W.D. Pa. 1999), *aff'd without op.*, 229 F.3d 1138, 2000 U.S. App. LEXIS 20601, 25 E.B.C. 1572 (3d Cir. Pa. 2000) (pension lawsuit under ERISA); *Walther v. Pension Plan for Salaried Employees of the Dayton-Walther Corp.*, 880 F. Supp. 1170 (S.D. Ohio 1994) (pension lawsuit).

ultimately resulted in $415 million settlement.  *See Gavalik v. Continental Can*, 812 F.2d 834 (3d Cir. 1987); *McLendon v. Continental Group*, 749 F. Supp. 582 (D.N.J. 1989), *aff'd*, 908 F.2d 1171 (3d Cir. 1990).

Mr. Payne actively participates in the American Bar Association's Labor and Employment Law Section, and serves as chairperson of the Subcommittee for Benefit Claims and Individual Rights within that Section's Benefits Committee.  He is a Charter Fellow of the American College of Employee Benefits Counsel, and speaks frequently on ERISA topics, including at this year's ABA annual conference.

### (c)     John Stember

John Stember is also a partner at Stember Feinstein.  Mr. Stember has been practicing law for nearly 31 years.  Since 1993, he has been litigating ERISA cases and has been appointed class counsel in a numerous ERISA class actions, including most recently *UAW v. General Motors Corp.*, 2:07-cv-14074 (E.D. Mich.); *UAW v. Chrysler LLC*, 2:07-cv-14310 (E.D. Mich.); *UAW v. Ford Motor Company*, 2:07cv14845 (E.D. Mich.); and *Sowers v. FreightCar of America* 03:07cv201-KRG.  Other ERISA class actions in which he was appointed class counsel include: *United Auto Workers v. General Motors*, 2006 WL 334283 (E.D. Mich. Feb. 13, 2006), *later proceedings*, 2006 WL 891151 (E.D. Mich. March 31, 2006); and 235 F.R.D. 383 (E.D. Mich. 2006), *aff'd*, ___ F.3d ____, 2007 WL 2239208 (6th Cir. 2007); *United Auto Workers v. Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471 (E.D.Mich. July 13, 2006), *aff'd*, ___ F.3d ____, 2007 WL 2239208 (6th Cir. 2007); *Crown Cork & Seal v. United Steelworkers of America*, 32 E.B.C. 1950, 2004 U.S. Dist. LEXIS 760 (W.D. Pa. 2004); *Santos v. Pechiney Plastics Packaging Inc.*, Case No. C 05-00149 (N.D. Calif.); *Theis v. Sunoco*, Case No. 04-0199 (W.D. Pa); *Asarco v.*

*United Steelworkers of America*, 2005 U.S. Dist. Lexis 20873 (D. Ariz.); *Moore v. Rohm & Haas*, 446 F.3d 643 (6th Cir. 2006), *later proceedings*, ___ F. Supp. 2d ___, 2007 WL 2230592 (N.D. Ohio Aug. 1, 2007); *Rexam, Inc. v. United Steelworkers of America*, 2003 WL 22477858 (D. Minn. Oct. 30, 2003), *later proceedings*, 2005 WL 1260914 (D.Minn. May 25, 2005), 2005 WL 2318957 (D. Minn. Sept. 22, 2005), 2006 WL 435985 (Feb. 21, 2006), and 2006 WL 2530384 and (D.Minn. Aug. 31, 2006).

Mr. Stember actively participates in the American Bar Association's Labor and Employment Law Section, and serves as Vice Chairperson of the Subcommittee for Collectively Bargained Benefits that Section's Benefits Committee.  He was recently named a Pennsylvania "Superlawyer" by Law & Politics.

### (d)    Stephen M. Pincus

Stephen M. Pincus is a partner with Stember Feinstein.  After graduation from law school, Mr. Pincus served as a clinical teaching fellow at Yale Law School and then went on to clerk for a federal District Court judge.  For over a decade, he has concentrated his practice in the area of employment and ERISA litigation, including a number of class actions.  *See* Ex. 2, Stember Feinstein Firm Resume.

### (e)    Lawrence A. Frolik

Lawrence A. Frolik is of counsel to Stember Feinstein and is a Professor of Law at the University of Pittsburgh School of Law.  A graduate of Harvard Law School, Professor Frolik teaches and writes in the area of Employee Benefits, including *The Law of Employee Pension and Welfare Benefits* (Matthew Bender 2004) (co-author).  Professor Frolik is one of the founders of the area now known as "Elder Law," in which he has co-authored written several

books including, Advising the Elderly or Disabled Client (Warren, Gorham, and Lamont, 2d ed. 1999).  *See* Ex. 2, Stember Feinstein Firm Resume.

### 3.    Lewis, Clifton & Nikolaidis, P.C.

Plaintiff further proposes that the firm of Lewis, Clifton & Nikolaidis, P.C. be appointed Liaison Counsel.  Located in New York City, Lewis Clifton concentrates its practice in the representation of labor unions, employees, and employee benefit funds.  As their resume demonstrates (Lieverman Decl., Ex. 3), they have substantial experience in federal litigation and in representing employees in employment-related disputes.  They are also familiar with ERISA litigation.

### C.    Counsel for Plaintiffs Have the Resources Necessary to Represent the Class

The proposed Interim Co-Lead Counsel are all well-established and successful law firms that have the resources and personnel necessary to pursue a case of this magnitude, as each has demonstrated in numerous similar large-scale class actions.  The firms' resources are not merely financial, but also include substantial expertise and experience, discussed above, that they have developed in other cases that will be an obvious benefit to the Plaintiffs in this action.   Counsel's ability to draw from this experience will allow them to streamline the litigation and create efficiencies unavailable to other firms.  Thus, the resource factor under Rule 23(g) also favors appointment of the proposed Interim Co-Lead Counsel.

As shown above, movants are fully prepared assume the leadership of the this case by themselves on behalf of the class.  However, experience has taught that leadership of complex cases can also be productively shared with other law firms.  Movants here stand ready to work

-23-

cooperatively with other firms in a leadership structure as directed by the Court,[6] and to

responsibly share work with all plaintiff firms in the case.

---

[6] In large, complex cases, courts have generally appointed two, three or even four firms as co-lead counsel. This includes ERISA cases with claims similar to those raised here. *See, e.g., In re Global Crossing Ltd. Securities and ERISA Litigation*, No.02 MD 1472 (GEL) (S.D.N.Y. Dec. 13, 2002) (three co-lead counsel); *In re AIG ERISA Litig.*, No. 04 Civ. 8141 (S.D.N.Y. Aug. 3, 2005) (D.E. 34) (four law firms as Provisional Committee). Co-lead counsel structures are also common under the Private Securities Litigation Reform Act. *See, e.g.*, *Walker v. Deutsche Bank*, AG, No. 04 Civ. 1921 (DAB), 2005 WL 2207041 (S.D.N.Y. Sept. 6, 2005) (three co-lead counsel); *In re SCOR Holding (Switzerland) AG Litigation*, No. 04 Civ. 07897 (MBM) (S.D.N.Y.) (three co-lead counsel); *Welmon v. Chicago Bridge & Iron Co. N.V.*, No. 06 Civ. 1283 (S.D.N.Y. June 20, 2006) (three co-lead counsel). *See also In re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430 (D. Mass.) (four co-lead counsel); *In re Linerboard Antitrust Litigation*, C.A. No. 98-5055 (E.D. Pa.) (three co-lead counsel). The *Manual* expressly recognizes that "[t]he function of lead counsel may be divided among several attorneys. . . ." MCL 4th § 10.221.

## CONCLUSION

For the foregoing reasons, Plaintiff Hansen respectfully request that the Court appoint Spector Roseman & Kodroff, P.C. and Stember Feinstein Doyle and Payne, LLC as Interim Co-Lead Counsel, with Lewis, Clifton, & Nikolaidis, P.C. serving as liaison counsel.

Date: August 26, 2008                                           /s/  Louie Nikolaidis
                                                                Louie Nikolaidis, Esq.
                                                                LEWIS, CLIFTON & NIKOLAIDIS, P.C.
                                                                275 Seven Avenue, Suite 2300
                                                                New York, NY 10001-6708
                                                                (212) 419-1500

Robert M. Roseman                          Ellen M. Doyle
Theodore M. Lieverman                      John Stember
Andrew D. Abramowitz                       Pamina Swing
Daniel J. Mirarchi                         Stephen M. Pincus
SPECTOR ROSEMAN & KODROFF, P.C.            Joel R. Hurt
1818 Market Street, Suite 2500             STEMBER FEINSTEIN DOYLE &
Philadelphia, PA 19103                       PAYNE, LLC
(215) 496-0300                             429 Forbes Avenue
                                           Pittsburgh, PA  15219
                                           (412) 281-8400

-25-